# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER NEWCOMB,<br><br>                      Plaintiff,<br>v.<br><br>U.S. OFFICE OF SPECIAL COUNSEL;<br>WILLIAM E. REUKAUF, acting United<br>States Special Counsel, in his official<br>capacity,<br><br>                      Defendants. | Case No. 10cv1923 BTM(NLS)<br><br>**ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER AND DISMISSING ACTION** |

Plaintiff Chirstopher Newcomb has filed a motion for a temporary restraining order. Plaintiff seeks to enjoin Defendants from (1) removing or suspending him from his position as an employee of the federal government, or (2) pursuing any enforcement action under the Hatch Act against him as a result of his participation in the upcoming Alpine Union School District board election, scheduled for November 2, 2010. For the reasons discussed below, Plaintiff motion for a temporary restraining order is **DENIED**, and this case is **DISMISSED**.

## I.  FACTUAL BACKGROUND

Plaintiff Christopher Newcomb is employed as an Acquisition Professional/ Software Program Manager at Space and Naval Warfare Systems Command (SPAWAR) in San Diego, California. Plaintiff currently serves on the Alpine Union School District Board.

1

Plaintiff was appointed to the Board to fill the unexpired term of a previous school board member who resigned. Plaintiff's current term expires in November, 2010.

Plaintiff desires to retain his seat on the school board. He has filled out all of the necessary documents to stand for election, and his name will appear on the November 2, 2010 ballot.

The Board has five members, with three seats up for election in November. Under California law, the Board election is nonpartisan. Cal. Const., Art. II, § 6(a); Cal. Election Code §§ 334, 8002. According to Plaintiff, he is running a nonpartisan campaign for election to the Board, has not sought and will not accept the endorsement or support of any political party or partisan organization, and has not sought and will not accept any financial or other contributions or support from any political party or partisan organization. (Newcomb Decl. ¶¶ 6-7.) Plaintiff also characterizes the matters at issue in the campaign as "nonpartisan in nature." (Newcomb Decl. ¶ 8.)

Plaintiff sought the advice of the U.S. Office of Special Counsel ("OSC") regarding whether standing for election to the Board would violate the Hatch Act. In a letter dated April 14, 2010, the OSC responded to Plaintiff's request for an advisory opinion. (Ex. 2 to Newcomb Decl.)

In the letter, Peta-Gay Irving Brown, an attorney with OSC, explained that the Hatch Act prohibits candidacy in partisan elections. 5 U.S.C. § 7323(a)(3). Brown further explained that although state or local laws designate an election as "nonpartisan," such designation crates only a rebuttable presumption that an election is nonpartisan. Brown advised that the Hatch Act prohibits Plaintiff from being a candidate in an election that has become partisan even if he is running independent of a political party, and that "if any candidate in the nonpartisan election for AUSD School Board engages in conduct that warrants a conclusion that the candidate represents a political party, then the election has become a partisan election."

With respect to what conduct can convert a nonpartisan election into a partisan one, Brown explained:

> No bright-line rule exists that identifies the type or amount of conduct needed to prove that a statutorily designated nonpartisan election, in fact, became a partisan one. McEntee, 404 F.3d at 1334. Therefore, OSC would have to evaluate the facts and circumstance of each case to determine whether a candidate in a nonpartisan election engaged in conduct that warrants a conclusion that the candidate represents a political party. Generally, a nonpartisan election could become partisan if, for example, one of the candidates in the election were to: participate in and win a party caucus; hold himself out as having the party's political support by lauding such support in his speeches, flyers, or mailings; seek or advertise a political party's endorsement; or receive support of a political party in the form of funding, campaign supplies, campaign volunteers, campaign publications, or use of the political party headquarters. Please note that the foregoing is not an exhaustive list of circumstances that could change a nonpartisan election to [a] partisan one.

(Brown letter, p. 2.)

Plaintiff is aware of two candidates for the Board who have been endorsed by political parties (one has been endorsed by the county Democratic Party and the other has been endorsed by the county Republican Party). (Newcomb Decl. ¶ 11.) Plaintiff does not know if any other candidates have been endorsed by any political party or have received any support from any political party. (Id.) Plaintiff states that he has been informed by OSC that if it determines that the election has become partisan, it will instruct him to either withdraw from the election or resign. (Newcomb Decl. ¶ 13.) OSC advised Plaintiff that if he could not officially withdraw, he would have to take steps such as making a public announcement and ceasing all campaign activities. (Id.) In the event he was nonetheless elected, he would have to decline to take his seat or resign his federal position. (Id.)

On August 27, 2010, Plaintiff's attorney, David Blair-Loy, e-mailed Brown and advised Brown that the Republican Party had endorsed one of the candidates in the school board race. (Brown Decl. ¶ 13.) On September 2, 2010, Brown sent a reply e-mail, explaining that OSC would need to investigate the matter and inquiring whether Plaintiff was requesting another advisory opinion. (Id.)

Plaintiff did not request another advisory opinion. This action was filed on September 15, 2010.

## II. STANDARD

A plaintiff seeking a preliminary injunction or temporary restraining order must establish that (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. Winter v. Natural Resources Defense Council, __ U.S.__, 129 S. Ct. 365, 374 (2008).

In a recent decision, the Ninth Circuit held that the "sliding scale" approach to preliminary injunctions survives Winter when applied as part of the four-element Winter test. Alliance for the Wild Rockies v. Cottrell, __ F.3d __, 2010 WL 3665149, at * 5 (9th Cir. 2010). "In other words, 'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the Winter test are also met." Id.

## III. DISCUSSION

Plaintiff argues that the Court should issue a temporary restraining order because his First Amendment right to stand for election to the Alpine Union School Board is being infringed by the threat of prosecution under the Hatch Act. However, as discussed below, the Court concludes that this case is not ripe for judicial review.

The Court is guided by the District of Columbia Circuit's decision in American Fed'n of Gov't Employees, AFL-CIO v. O'Connor, 747 F.2d 748 (D.C. Cir. 1984). In O'Connor, the plaintiff unions sought an opinion from the OSC regarding whether members of the union could lawfully conduct non-partisan voter registration drives at their worksites even though the unions had endorsed presidential candidates for the upcoming elections. The unions explained that "no attempt is made to solicit registrants on the basis of political party or candidate preference." Id. at 751. In an advisory letter, the OSC explained that the absence of solicitation at a voter registration information booth does not necessarily mean that a drive is not partisan, and is only one factor to be considered. Id. The letter listed other factors that the OSC might consider, and emphasized that the list was only a partial one. Although

the OSC indicated that it had not conducted any investigation into the unions' activity, the OSC stated that based on material available to them, including communiqués from leaders of the national unions and their locals regarding the importance of voter registration in advancing the campaigns of the candidates supported by the unions, "the ineluctable conclusion must be that those voter registration drives sponsored or conducted by the unions are, in fact, partisan." Id. Accordingly, the OSC concluded, "we must advise you that participation by federal employees in your unions' voter registration drives is prohibited political activity within the definition of the Hatch Act." Id. at 751-52.

The plaintiff unions in O'Connor sought a declaration that the OSC's advisory opinion was contrary to the Hatch Act and in violation of the First Amendment. The district court reached the merits of the claims and found that the OSC's advisory opinion was consistent with the Hatch Act and constitutional.

On appeal, the D.C. Circuit concluded that there was no concrete claim ripe for court adjudication, vacated the judgment, and remanded the case with instructions to dismiss the complaints for failure to present ripe claims. Id. at 750. The D.C. Circuit found the case unsuitable for court adjudication for two reasons: (1) the "character of the challenged administrative action" ; and (2) the "sweeping generality of the case the unions have chosen to state." Id. at 752.

With respect to the character of the challenged advisory opinion, the court explained, "[T]he advice the Special counsel is permitted to give creates no law and binds neither the public nor any agency or officer of government. *No precedent known to us sanctions court review of such nonbinding advisory expositions.*" Id. at 752-53 (emphasis added.) The court described how Congress charged the Merit Systems Protection Board (MSPB) with adjudicating Hatch Act cases, the Office of Personnel Management (OPM) with promulgating Hatch Act regulations, and the OSC with investigating allegations of Hatch Act violations and presenting them to MSPB. Id. at 753. Under this scheme, "the prosecutorial and adjudicatory arms of the statutory scheme work independently; the MSPB is free to disagree with the Special Counsel and often does." Id. "The special counsel neither represents the

5

views of the MSPB nor holds sway over it; his advisory opinions offer essentially a forecast, albeit an educated one, of the way the MSPB would rule if an actual case materialized." Id.

In light of the non-binding nature of the OSC's advisory opinions, the D.C. Circuit reasoned that there are sound reasons for not subjecting such advice to judicial review. The first reason is the inhibitive effect judicial review might have on the rendering of advisory opinions, a public service the Supreme Court in United States Civil Serv. Comm'n v. Nat'l Ass'n of Letter Carriers, 413 U.S. 548, 580 & n. 22 (1973), indicated would *alleviate* the Hatch Act's potential to chill the exercise of First Amendment rights:

> But if the Special Counsel could be haled into court every time there was heard a discouraging word from his office, the giving of needed advice would perforce be hampered and might well be paralyzed. Absent some indication that the Special Counsel has metamorphosed from a counselor and constructor of safe harbors into a determined censor of government employees' political activities, judges should not jeopardize a process that the High Court has identified as a saving grace of Hatch Act administration.

O'Connor, 747 F.2d at 754.

The second reason why the OSC's advisory opinions should not be subject to judicial review is that judicial review would interfere with the congressionally established scheme for deciding Hatch Act cases. Id. at 754. Because MSPB has been designated by Congress as the administrative forum of first resort in the adjudication of Hatch Act enforcement cases, "[w]ere we to allow parties discontent with the Special Counsel's advice to proceed directly to court, bypassing the MSPB altogether, we would strip the MSPB of the authority Congress allocated to that body as tribunal of the first instance. Id. at 755.

The D.C. Circuit held that even if the OSC's opinions could bind the MSPB in Hatch Act matters, ripeness would still be at issue because the facts at the heart of the controversy were underdeveloped. The court pointed out that the unions tendered "no fact-particular case to or against the Special Counsel," but, instead, sought assurance that their registration activities, which were not described in detail, would be deemed in compliance with the Hatch Act as long as there was no attempt to solicit registrants on the basis of political party or candidate preference. Id. at 756. Although the OSC refused to grant the unions the general license they sought, the OSC's action presented "no crystallized controversy." Id. The "fact-

6

thin quality" of the case presented by the unions precluded the court from holding that "a genuine threat of enforcement" had been demonstrated. Id. at 757.

O'Connor is on all fours with the case presently before the Court. As in O'Connor, the OSC in this case has rendered an advisory opinion, but has not initiated any prosecution. Indeed, according to the OSC, the OSC has not even opened an investigative file or initiated an investigation regarding Plaintiff's involvement in the Board election. (Brown Decl. ¶ 14.) One can only speculate whether the OSC will initiate an investigation and, assuming a violation is found, will choose to file a complaint with the MSPB. Even if the OSC files a complaint with the MSPB, the MSPB may not agree that a Hatch Act violation has occurred.[1]

Due to the uncertainty of whether the OSC will choose to prosecute and, if the OSC chooses to do so, how the MSPB will rule, the controversy is not ripe for judicial resolution. As explained by the Supreme Court, "[I]t is fair to say that [the ripeness doctrine's] basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." Abbott Laboratories v. Gardner, 387 U.S. 136, 148-49 (1967). See also United States v. Braren, 338 F.3d 971, 976 (9th Cir. 2003) (holding that action brought by the United States and Indian tribes seeking a declaration of their water rights was not ripe because the Water Department's preliminary evaluation, which prompted the suit, did not bind the administrative panels that would hear contests in the adjudication, did not bind the Water Department in considering those panels' proposed order and issuing its final findings, and did not bind the Oregon courts in reviewing the Water Department's findings); Boating Indus. Ass'ns v.

---

[1] In Special Counsel v. Mahnke, 54 M.S.P.R. 13 (MSPB 1992), the MSPB held that an employee who participated in an election for city alderman violated the Hatch Act. Atlhough the election was "nonpartisan" according to Vermont law, one of the candidates was endorsed by the Democratic party, and the designation "Democratic" appeared on the ballot next to the candidate's name. In this case, according to Plaintiff, candidates for the Board are not listed on the ballot as representing or nominated by any political party. It is unclear whether the endorsement of a candidate by a political party without more is enough to render an election partisan.

7

Marshall, 601 F.2d 1376 (9th Cir. 1979) (finding nonjusticiable a challenge to the interpretation of the Longshoremen's and Harbor Workers' Compensation Act issued by the Office of Workers' Compensation Programs, because the interpretation that would ultimately injure or benefit the appellees was that of the Benefits Review Board).

The Court shares O'Connor's concern that judicial review of OSC advisory opinions would discourage the OSC from issuing advisory opinions. It seems that if the OSC had declined to issue an advisory opinion in this case, Plaintiff would have had no basis for filing suit. If the issuance of an opinion subjects the OSC to being haled into court, the OSC "might hesitate to devote the limited resources of his office to this work." O'Connor, 747 F.2d at 754.

The Court also agrees with O'Connor's conclusion that judicial review of OSC advisory opinions would interfere with the Hatch Act enforcement scheme established by Congress. The MSPB occupies the role of "refining the law of prohibited political activities through the continual decision of cases and the coordination of the rules that emerge from them; the process of applying administrative experience and expertise to the ever-varying fact patterns in this constitutionally delicate field." O'Connor, 747 F.2d at 755. Judicial review of OSC advisory opinions would result in various district courts substituting their opinions for that of the MSPB, the designated tribunal of first instance. Furthermore, such judicial review would result in a patchwork of potentially inconsistent decisions.

Finally, as in O'Connor, there is no crystallized controversy here because the facts presented to the OSC were sorely underdeveloped. The advisory opinion was issued in response to Plaintiff's request for clarification on the circumstances under which a nonpartisan election may turn into a partisan election. Plaintiff apparently expressed concern that he could be eliminated from the race simply by an opponent seeking the endorsement of a political party, and the OSC generally explained that a nonpartisan election "*could* become partisan if, for example, one of the candidates in the election were to: participate in and win a party caucus; hold himself out as having the party's political support by lauding such support in his speeches, flyers, or mailings; seek or advertise a

political party's endorsement; or receive support of a political party in the form of funding, campaign supplies, campaign volunteers, campaign publications, or use of the political party headquarters." (Emphasis added.) The OSC noted that the list was not an exhaustive list and that the OSC "would have to *evaluate the facts and circumstance of each case* to determine whether a candidate in a nonpartisan election engaged in conduct that warrants a conclusion that the candidate represents a political party." (Emphasis added.)

Plaintiff was not aware of other candidates receiving endorsements from political parties until <u>after</u> the advisory opinion was rendered. The advisory opinion was not based on any actual facts regarding other candidates being endorsed by political parties, and it is unclear what the OSC's position would be if it knew all the relevant details. Plaintiff did not ask for another advisory opinion after learning of the endorsements, and the OSC never had the opportunity to evaluate the facts and circumstances of Plaintiff's specific case. Thus, the Court cannot conclude that the advisory opinion demonstrates a genuine threat of prosecution.

The Court recognizes that Plaintiff must make the difficult decision whether to continue devoting time and resources to campaign for a board position he may be forced to resign if he is found to have violated the Hatch Act (and wishes to keep his federal job). However, Plaintiff's hardship and his invocation of the First Amendment do not overcome the lack of ripeness. Although it would be convenient if federal employees running for election (or engaging in other activity that could, under certain circumstances, be deemed as partisan political activity) could obtain a guarantee beforehand that they will not be deemed in violation of the Hatch Act, such pre-certification is not possible under the Hatch Act's enforcement scheme, and such employees must make some hard choices and run some risks. Cf. Boating Indus.Ass'ns, 601 F.2d at 1385 ("The appellees, of course, face a difficult choice whether to insure or not, but the choice is not unlike that forged by many regulatory statutes with criminal sanctions.")

## IV. <u>CONCLUSION</u>

For the reasons discussed above, Plaintiff's motion for a temporary restraining order is **DENIED**. The Court also orders **DISMISSES** this action for lack of ripeness.

**IT IS SO ORDERED.**

DATED: October 15, 2010

*/s/ Barry Ted Moskowitz*
Honorable Barry Ted Moskowitz
United States District Judge